# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CASEY A. GADDY, | : | |
|    *Plaintiff*, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-6529 |
| | : | |
| WOOD BROTHERS BAR INC., | : | |
| *d/b/a* WOODY's, *et al.*, | : | |
|    *Defendants*. | : | |

## MEMORANDUM

**Pappert, J.**                                                                                                  August 28, 2025

     Casey Gaddy sued his former employers, Wood Brothers Bar Inc. d/b/a Woody's and Mayfield Social Club d/b/a Voyeur, after he was fired from his job as a bartender. He brings sex discrimination and retaliation claims under Title VII and state law claims for defamation and intentional infliction of emotional distress. The defendants moved to partially dismiss the amended complaint (Dkt. No. 12) and the Court grants the motion in part and denies it in part.

I[1]

     Woody's is an "LGBTQ+ bar," and Mayfield is an after-hours nightclub in Philadelphia. (Am. Compl. at 2.) Gaddy began working as a bartender at both locations in February 2017, until his termination from Woody's on May 8, 2022. (*Id*. at 2, 5.) Gaddy states that during his employment, he "consistently met and exceeded performance expectations." (*Id*. at 4.) On December 21, 2021, Gaddy was promoted to

---

[1] The factual allegations are taken from the Amended Complaint and the attached exhibits (Dkt. No. 4). Many of the exhibits refer to Gaddy as "Casey Leaver," which was the Plaintiff's name when he was employed with Woody's and Mayfield. The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

bartend the South Bar at Woody's, which was one of Woody's "top-performing sales locations." (*Id.* at 3.) In that role, Gaddy worked with a female bartender named M. Esser. (*Id.*) Four male bartenders who worked the South Bar between 2019 and 2022 were fired. (*Id.*)

Gaddy generally alleges that he "experienced unequal treatment which favored female employees over male employees in work assignments, compensation opportunities, and disciplinary action." (*Id.* at 2.) For example, Gaddy and other male bartenders had to wear a "Woody's polo uniform," but female bartenders could wear whatever they wanted. (*Id.* at 3.) In addition, Esser and other female bartenders were allowed to leave their shifts at Woody's to bartend "lucrative late-night hours at Mayfield," while Gaddy and other male bartenders could not. (*Id.* at 4.) When Gaddy asked why he was "systematically excluded" from the lucrative shifts, a supervisor at Woody's, Gillespie, responded that "he preferred assigning women to these shifts because they were 'better under pressure.'" (*Id.*) Female bartenders were also consistently chosen to work high-paying private events and parties where they would make more money. (*Id.*) When Gaddy asked to be considered for these shifts, Gillespie stated, "You don't fit the look, women are more approachable, let's leave the testosterone for the dancers." (*Id.*) On April 22, 2022, when Gaddy confronted Gillispie about the "preferential treatment afforded to female employees in work assignments and earning opportunities," Gillispie "dismissed [Gaddy's] concerns" and stated that "such decisions were within [Gillispie's] discretion." (*Id.* at 5.)

Gaddy was suspended on May 5, 2022, by Roy Baldwin, another supervisor at Woody's, based on accusations that Gaddy was charging unauthorized tips to customer

credit cards.  (*Id*.)  Gaddy told Baldwin that the "chargeback" receipts at issue, however, belonged to Esser.  (*Id*.)  Although Baldwin "later acknowledge[d] Gaddy's innocence" in a text message, on May 8, 2022, Baldwin fired Gaddy, "without explanation."  (*Id*.)  Esser was not disciplined and remained employed by Woody's.  (*Id*. at 6.)  Gaddy has consistently denied his former employer's allegations of theft or fraud.  (*Id*.)

Gaddy also alleges that Defendants filed "false and defamatory allegations with unemployment authorities," which accused Gaddy of theft and fraud and which have "irreparably damaged" his "reputation and career prospects."  (*Id*. at 2.)  Specifically, on July 5, 2022, Gaddy applied for unemployment compensation benefits with the Unemployment Compensation Board of Review, a division of the Pennsylvania Department of Labor and Industry.  (*See id*. at 43 (noting "Date Filed").)  As part of its investigation, on April 5, 2023, the Unemployment Compensation Board interviewed Woody's President, William Weiss, regarding Gaddy's claim for benefits.  (*Id*. at 8, 38-40, 46-48.)  Weiss alleged that Gaddy engaged in "stealing" by "adding tips to credit card receipts that the customer did not approve," and that the incident precipitating his termination was "not the first time" Gaddy was caught engaging in this conduct.  (*Id*. at 39-40.)  Weiss also misrepresented that Gaddy admitted to possessing chargeback receipts when Gaddy "consistently maintained his innocence."  (*Id*. at 8.)

On October 20, 2022, Gaddy filed a charge of discrimination against Woody's with the Equal Employment Opportunity Commissioner.  (*Id*. at 7, 36.)  Gaddy stated the Charge is for "discrimination based on sex" that "took place" on May 5, 2022.  Gaddy's description of the charge provides:

3

> On or about February 2017, I was hired as a bartender by Respondent, who operates a gay bar in Center City Philadelphia. Over the following 5 years, I promoted up to highest grossing bar in the establishment where I worked alongside a heterosexual female bartender. On May 5th, 2022, I was suspended by Respondent after it initiated an investigation for suspicious bills it had discovered at the bar where my female bar mate worked. In the preceding 3 years, there were three male bartenders who had been suddenly discharged for various unknown reasons while their female counterpart continued uninterrupted with her employment. In mid-July 2022, I called Respondent to ascertain the status of my employment and was informed that my services were no longer required. Throughout my tenure at Respondent I have seen a pattern and practice whereby Respondent previously discharged three (3) male bartenders that have worked alongside my former female bar mate. In light of this pattern, and that Respondent knew the questioned receipts were in the name of the female bartender, I believe and assert that I have been subjected to gender discrimination, a violation of title seven of the Civil Rights Act of 1964, as amended.

(Am. Compl. at 36.)

Gaddy also filed a charge of discrimination against Mayfield on January 9, 2023, alleging that Mayfield retaliated against him after he filed the EEOC charge against Woody's. (*Id.* at 7, 52.) On September 12, 2024, the EEOC closed Gaddy's cases against Woody's and Mayfield and issued Gaddy right-to-sue letters. (*Id.* at 65, 66.)

In the Amended Complaint, Gaddy asserts Title VII claims for sex discrimination and retaliation against Woody's (Count 1), Title VII retaliation claims against Mayfield (Count 2), and Pennsylvania state law claims for defamation and IIED against both Defendants (Count 3). (*See id.* at 9-23.) After waiving service, Defendants filed their motion seeking dismissal of certain of Gaddy's Title VII claims asserted against Woody's, and the defamation and IIED claims against both Defendants. (Dkt. No. 12; *see also* Dkt. No. 15.)

II

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. "A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the amended complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendants' burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."

*Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  To determine whether a complaint filed by a *pro se* litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).

III

A

Gaddy asserts in Count 1 sex discrimination and retaliation claims against Woody's under Title VII of the Civil Rights Act of 1984, 42 U.S.C. § 2000e, et seq.  He articulates four bases for his discrimination claims:  that he was terminated because he is male; that Woody's enforces a discriminatory dress code policy that favors female employees; that Woody's maintains sex-based disparities in work assignments; and that Woody's retaliated against him by terminating him after he challenged their favoritism of female employees.  (Am. Compl. at 9-16.)  Defendants contend that Gaddy did not exhaust his administrative remedies with respect to any claims he bases on Woody's dress code policy, its work assignments, or on alleged retaliation.  (Dkt. No. 12 at 18-21.)

Before filing a lawsuit under Title VII, a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC and receiving a right-to-sue letter.  42 U.S.C. § 2000e-5(e)(1); *Mikula v. Allegheny Cnty.*, 583 F.3d 181, 183-85 (3d

Cir. 2009). A Title VII plaintiff may then only bring claims "that are within the scope of the initial administrative charge" to the EEOC. *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010) (citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)). To determine if a claim is administratively exhausted, the court must look at whether the claims are "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (quoting *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996)); *see also Barzanty*, 361 F. App'x at 414. "Where facts alleged in a complaint fall outside the core grievance addressed in the EEOC charge, the new claim is distinct and has not been administratively exhausted. *Gardner v. SEPTA*, 824 F. App'x 100, 105 (3d Cir. 2020); *see also Jones v. Glenmede Tr. Co.*, No. 20-5705, 2021 WL 2555436, at *4 (E.D. Pa. June 22, 2021) (stating that while a "complaint does not need to mirror an EEOC Charge, the facts stated in the Charge must only be ample and specific enough to put the EEOC on notice of the claim."). A court must construe the EEOC charge liberally, especially in cases like this one, when the charge is drafted by the plaintiff and not an attorney. *Hicks v. ABT Assoc., Inc.*, 572 F.2d 960, 965 (3d Cir. 1978).

      The Court must examine whether Gaddy's retaliation claim, his sex discrimination claim based on the dress code policy, and his sex discrimination claim based on disparities in work assignments were fairly within the scope of (1) his EEOC charge or (2) the investigation arising from that charge. Gaddy's EEOC Charge against Woody's states that "discrimination based on sex . . . took place" on May 5, 2022. For a description of the charge, Gaddy stated:

> On or about February 2017 I was hired as a bartender by Respondent, who operates a gay bar in Center City Philadelphia. Over the following 5 years,

7

> I promoted up to highest grossing bar in the establishment where I worked alongside a heterosexual female bartender. On May 5th, 2022, I was suspended by Respondent after it initiated an investigation for suspicious bills it had discovered at the bar where my female bar mate worked. In the preceding 3 years, there were three male bartenders who had been suddenly discharged for various unknown reasons while their female counterpart continued uninterrupted with her employment. In mid-July 2022, I called Respondent to ascertain the status of my employment and was informed that my services were no longer required. Throughout my tenure at Respondent I have seen a pattern and practice whereby Respondent previously discharged three (3) male bartenders that have worked alongside my former female bar mate. In light of this pattern, and that Respondent knew the questioned receipts were in the name of the female bartender, I believe and assert that I have been subjected to gender discrimination, a violation of title seven of the Civil Rights Act of 1964, as amended.

(Am. Compl. at 36.)  The charge does not reference an alleged discriminatory dress code policy or disparity in work assignments. It also does not mention or describe retaliatory conduct in any way. Thus, Gaddy's sex discrimination claims based on the dress code policy and work assignments and his retaliation claim are not fairly within the scope of his EEOC charge. The Court must therefore consider whether the claims are fairly within the scope of the EEOC's investigation arising from that charge.

This step of the analysis is objective. Courts must consider "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination," and not what the EEOC actually investigated. *Simko v. United States Steel Corp.*, 992 F.3d 198, 210 (3d Cir. 2021); *see also Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984) (holding that "[w]hether the actual EEOC investigation uncovered any evidence of retaliation is of no consequence" in determining whether a new claim of retaliation is encompassed in the original EEOC charge). To determine whether a claim "fairly or reasonably falls within the investigation arising from a charge, courts consider (1) whether the claim arises from the same set of facts

that support the original charge and (2) whether the claim advances the same theory of discrimination as the original charge." *Simko*, 992 F.3d at 209.  Courts "look for factual similarities or connections between the events described in the claims, the actors involved, and the nature of the employer conduct at issue." *Id*. at 211.  However, even if there is some "factual overlap," the new allegations may not be encompassed by the EEOC charge "if they do not fall within the 'gravamen' of the initial charge." *Id*.  Conversely, if there is "no factual nexus" between the two, courts may consider "whether the two sets of allegations advance the same theory of discrimination." *Id*.

The "gravamen" of Gaddy's EEOC charge is that he was subjected to sex discrimination, which ultimately led to his termination.  Gaddy states that he was suspended for a "suspicious billing" issue on May 5, 2022, and that despite Woody's investigation, which exonerated him, they nevertheless terminated him because he was male. (Am. Compl. at 36.)  The EEOC charge references a three-year "pattern and practice" of sex discrimination based on three other firings of male bartenders while the "female [bartender] counterparts" were not fired. (*Id*.)  Gaddy's EEOC charge, although lacking in specific factual examples of discrimination, makes clear that his termination—and the termination of other male bartenders—was not the result of employee workplace misconduct but due to Woody's discrimination against male bartenders.  A reasonable EEOC investigation into the "pattern or practice" would explore the reasons for that alleged sex-based discrimination and might include examination of other workplace policies revealing gender bias.  *See Kelly v. Regency Mgmt. Servs., LLC*, No. 24-2447, 2024 WL 5082326, at *2-3 (E.D. Pa. Dec. 11, 2024) (concluding that a failure to promote claim that was not described in an EEOC charge

9

was nevertheless administratively exhausted because the claim "can reasonably be understood as a continuation or extension of the allegedly discriminatory workplace environment, rooted in the same allegedly sexist culture"). Moreover, Gaddy's claims based on dress code policy or disparity in work assignments are based on the same theory of discrimination. Liberally construing the EEOC charge, and considering that Gaddy drafted it himself, Woody's has not sufficiently established that Gaddy's sex discrimination claims based on discriminatory dress code policy or disparity in work assignments were not properly exhausted.

Gaddy's retaliation claim against Woody's does not fare as well. Gaddy alleges in his Amended Complaint that, on April 28 and May 5, 2022, he "engaged in protected activity" by "object[ing] to favoritism shown by [his supervisor] Gillespie," and that Gaddy was then "met with swift and severe retaliation, culminating in his termination mere days later." (Am. Compl. at 15-16.) Although Gaddy's EEOC charge centers on his termination, it does not mention retaliation, Gillespie, or any other alleged protected activity. Unlike Gaddy's EEOC charge against Mayfield that specifically alleges a retaliation claim, the EEOC charge against Woody's contains no allegations in it that can fairly be understood as retaliatory. Gaddy's retaliation claim against Woody's is based on a different discriminatory theory and does not fall within the "gravamen" of his EEOC charge against Woody's. *See Akopian v. Inserra Supermarkets, Inc.*, No. 23-00519, 2024 WL 4894620, at *3-4 (D.N.J. Nov. 26, 2024) (dismissing retaliation claim as unexhausted because the plaintiff's EEOC charge only alleges a claim for wrongful termination).

B

Gaddy asserts defamation claims based on statements Weiss allegedly made during his interview with the Unemployment Compensation Board on April 5, 2023. Gaddy alleges that Weiss falsely accused Gaddy of fraud (Am. Compl. at 20), and that the statements "caused irreparable damage to [Gaddy's] reputation and future career opportunities" (*id*. at 19). Defendants contend this claim is barred by Pennsylvania's one-year statute of limitations for defamation claims and, even if timely, the claim is based on privileged statements made in connection with a quasi-judicial agency proceeding.

1

"A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). In Pennsylvania, defamation claims have a one-year statute of limitations that accrues at the time the allegedly false statement was published. *Oldham v. Pa. State Univ.*, 138 F.4th 731, 750 (3d Cir. 2025) (citing *Graham v. Today's Spirit*, 468 A.2d 454, 457 (Pa. 1983)); *see also McClenaghan v. Turi*, 567 F. App'x 150, 154 (3d Cir. 2014) (*per curiam*) ("The relevant triggering event for the statute of limitations in a defamation action under Pennsylvania law, however, is the *publication* of the defamatory communication by the defendant, not the point in time when the plaintiff first learns of the communication."). Here, the parties do not dispute that Weiss's statements were "published" at the latest in April of 2023, when Weiss was interviewed by the Office of Unemployment Compensation Benefits on April 3, 2023 or when Woody's appealed the

11

Office's decision to provide him benefits, on April 23, 2023.  (*See* Am. Compl. at 19 (stating that Defendants "published the [defamatory] allegations to the unemployment office and vocalized by Weiss in his interview").)  Gaddy did not file this lawsuit until December 5, 2024, more than a year after his defamation claim accrued.

     Gaddy does not dispute that his defamation claim was filed outside of the statute of limitations period.  Rather, he argues that Pennsylvania's discovery rule saves his untimely claim because he did not learn about the allegedly defamatory statement until July 19, 2024, when he "first accessed" the document entitled "Record of Oral Interview" containing Weiss's false statements and because "[t]he administrative structure of employment proceedings prevented earlier discovery."  (Dkt. No. 14 at 12.) Pennsylvania's "discovery rule" delays the running of the statute of limitations where "despite the exercise of reasonable diligence," a plaintiff cannot know that he is injured and by what cause.  *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005).  Defendants do not address Gaddy's discovery rule argument in their Reply.  Moreover, factual issues about notice of an injury and a plaintiff's ability to exercise reasonable diligence to discover that injury for purposes of determining when a claim accrues, generally should not be resolved at the pleading stage.  *See Adams v. Zimmer US, Inc.*, 943 F.3d 159, 164 (3d Cir. 2019) (citing *Gleason v. Borough of Moosic*, 15 A.3d 479, 485 (Pa. 2011)); *Id*. ("[T]hat the factual issues pertaining to Plaintiffs' notice and diligence are for a jury to decide" is a "well-established general rule" in Pennsylvania." (quoting *Nicolaou v.*

*Martin*, 195 A.3d 880, 894 (Pa. 2018)). Accordingly, the Court declines to dismiss Gaddy's defamation claims as time-barred at this early stage of the proceeding.[2]

2

To support his defamation claims, Gaddy alleges that Defendants published false allegations to the Unemployment Compensation Board in connection with his claim for unemployment benefits, both in paperwork submitted to the Board and through false statements made by Weiss in an internal interview. The alleged false allegations were that Gaddy engaged in fraud and theft by submitting amounts for tips on credit card charges that customers did not authorize. (Am. Compl. at 19-21.) Defendants argue that any statements to the Unemployment Compensation Board were made in connection with a quasi-judicial proceeding and thus are subject to an unqualified absolute privilege under Pennsylvania law. (Dkt. No. 12 at 23-28.)

Generally, statements made in connection with a judicial or quasi-judicial proceeding are subject to an absolute privilege. *Schanne v. Addis*, 121 A.3d 942, 946-49 (Pa. 2015) (discussing contours of absolute judicial and quasi-judicial privilege). The privilege applies to "communications which are issued in the regular course of judicial [or quasi-judicial] proceedings and which are pertinent and material to the redress or

---

[2] The Court need not address Gaddy's alternative argument that "equity demands tolling [of] the statute of limitations during the pendency of [his] EEOC investigation." (Dkt. No. at 1412.) The Court notes, however, that many courts conclude that state law claims are not equitably tolled while EEOC or state law agency proceedings are pending. *See, e.g.*, *Castagna v. Luceno*, 744 F.3d 254, 258 (2d Cir. 2014) (concluding that "filing an EEOC charge does not toll the time for filing state tort claims, including those that arise out of the same nucleus of facts alleged in the charge of discrimination filed with the EEOC"); *Semian v. Dep't of Mil. & Veterans' Affs. - Gino J. Merli Veterans Ctr.*, No. 17-1183, 2018 WL 4038116, at *7 (M.D. Pa. Aug. 23, 2018) (observing that "the weight of authority from other courts suggests that the filing of an EEOC complaint does not toll the time period to file state tort claim").

relief sought." *Bochetto v. Gibson*, 860 A.2d 67, 71 (Pa. 2004) (emphasis omitted). The privilege covers statements made by parties, witnesses, attorneys, and judges. *Schanne*, 121 A.3d at 947. It also covers statements made prior to the initiation of judicial proceedings if "issued in the regular course of preparing for, contemplated judicial proceedings." *Pollina v. Dishong*, 98 A.3d 613, 619 (Pa. Super. Ct. 2014) (emphasis omitted). The "privilege is absolute, meaning that, where it attaches, the declarant's intent is immaterial even if the statement is false and made with malice." *Schanne*, 121 A.3d at 947. One important rationale for this privilege "is to allow participants in judicial proceedings to speak freely without fear of civil liability." *Schanne*, 121 A.3d at 947. Whether statements are absolutely privileged is a question of law for the Court to decide. *Doe v. Wyoming Valley Health Care Sys., Inc.*, 987 A.2d 758, 767 (Pa. Super. Ct. 2009).

Whether Defendants' statements to the Unemployment Compensation Board are privileged turns on whether unemployment compensation proceedings are quasi-judicial proceedings and whether the statements were material to the redress or relief sought in those proceedings. "Pennsylvania recognizes quasi-judicial immunity for state administrative agency officials performing quasi-judicial or quasi-prosecutorial actions in relation to a quasi-judicial proceeding." *Pollina*, 98 A.3d at 620. However, Pennsylvania state courts have not yet considered whether an unemployment compensation proceeding is a quasi-judicial proceeding such that statements made in connection with them are privileged.[3]

---

[3] Defendants' reliance on *Milliner v. Enck*, 709 A.2d 417 (Pa. Super. Ct. 1998), is misplaced. Although the court in *Milliner* concluded that an employer's statements made to a Job Center in connection with an employee's eligibility for unemployment compensation were privileged, it explicitly limited its holding to the facts of the case

When determining whether an administrative or adjudicatory action or proceeding is quasi-judicial, courts consider whether it involves the "exercise of discretionary decision-making authority (i.e., applying the law, rules and regulations to the factual matrix of a given case) as well as the existence of procedural safeguards in the administrative proceeding similar to the safeguards afforded at a judicial proceeding (e.g., notice, hearing, right to cross-examine witnesses, etc.)." *Greenberg v. McGraw*, 161 A.3d 976, 983-84 (Pa. Super. Ct. 2017) (quoting *Pollina v. Dishong*, 98 A.3d 613, 620–21 (Pa. Super. Ct. 2014)).  Applying this standard, the absolute privilege has been extended to witness testimony at a hearing before the National Labor Relations Board, *see Doe*, 987 A.2d at 767-68; to members of a zoning board ruling on an application for a zoning permit, *see Urbano v. Meneses*, 431 A.2d 308, 311 (Pa. Super. Ct. 1981); to defamatory statements made to a Board of Medicine investigator tasked with evaluating a doctor's fitness to practice medicine, *see Greenberg*, 161 A.3d at 988-89; and to statements made in the normal course of a PHRC proceeding, *see Giusto v. Ashland Chem. Co.*, 994 F. Supp. 587, 593-94 (E.D. Pa. 1998).

Considering this standard, the procedures associated with Pennsylvania's unemployment compensation proceedings are quasi-judicial.  An Unemployment Compensation Board representative is tasked with examining benefit applications "and on the basis of the facts found by it, shall determine whether or not the application is valid."  43 Pa. Stat. Ann. § 821(a).  Notice is given to the last employer stating that the

---

because the employee had conceded that the statements were absolutely privileged, and thus that issue was not before the court. *See id.* at 419 n.1 (Pa. Super. Ct. 1998) ("We reiterate that our decision today should not be interpreted as holding that unemployment compensation proceedings are 'judicial proceedings' such that an absolute privilege applies to statements made in conjunction with the determination of benefits, since that issue is not before us.").

15

employee has filed a claim for benefits. *Id.* at § 821(b). If the employer "raise[s] a question as to the eligibility of the claimant," as Woody's did, then the employer will also be notified of the Department's determination of the claim. *Id.* at § 821(c)(3). Either the employee or the employer may appeal the benefits decision, 42 Pa. Stat. Ann. § 822(a), and if an appeal is taken, "a referee shall, after affording the parties and the department reasonable opportunity for a fair hearing, affirm, modify, or reverse such findings of fact and the determination . . . ." *Id.* These procedures "share many of the characteristics of the adjudicatory process," including the involvement of decision-making authorities (the Unemployment Compensation Board representative and the referee) and procedural safeguards such as notice, the right to an appeal, and the right to a fair hearing. *See Greenberg*, 161 A.3d at 987. Moreover, the statements made by Defendants, including the statements made by Weiss during the internal interview, were material to the relief sought in those proceedings—Gaddy's eligibility or ineligibility for unemployment compensation benefits.

Gaddy argues that even if Defendants' statements to the Unemployment Compensation Board were privileged, the privilege was destroyed because Weiss acted with malice when he accused Gaddy of theft despite the absence of any evidence to support it. However, even if alleged defamatory statements in a quasi-judicial proceeding are made with malice, the privilege still applies. *See Schanne*, 121 A.3d at 947 (stating that the privilege is "absolute, meaning that, where it attaches, the declarant's intent is immaterial even if the statement is false and made with malice."). Gaddy also argues that because he was not permitted to depose or cross-examine Weiss, he was not afforded the procedural safeguards that are the hallmark of quasi-judicial

16

immunity. (Dkt. No. 14 at 14.) However, "the privilege extends to statements made by individuals *seeking to initiate* judicial or quasi-judicial proceedings," regardless of whether that proceeding materialized. *Greenberg*, 161 A.3d at 987 (concluding that quasi-judicial privilege applied to a witness for "conveying information" to the Board of Medicine in order to initiate the Board's legal process against a doctor's medical license). Weiss's statements concerning Gaddy's alleged mishandling of customer bills were intended to initiate a quasi-judicial proceeding—the Unemployment Compensation Board's determination of Gaddy's ineligibility. The statements were therefore subject to the absolute privilege. In any event, because the Unemployment Compensation Board found in Gaddy's favor and there were apparently no further appeals, Gaddy did not need a hearing or to cross-examine Weiss. Accordingly, statements made in the context of Gaddy's unemployment compensation proceedings were privileged and there can be no liability based on these statements.[4]

---

[4] Any defamation claim Gaddy bases on statements Defendants made outside of the unemployment compensation proceedings must also be dismissed. Gaddy contends that "Defendants repeated these false accusations to third parties, including individuals in the same industry," which affected Gaddy's job prospects. (Dkt. No. 14 at 15.) However, the Amended Complaint describes only one alleged defamatory statement made outside of the unemployment compensation proceedings. Gaddy states that, on May 21, 2022, he "learned from a former colleague, S. Rice, that Defendants were spreading rumors" about Gaddy getting "caught stealing from customers." (Am. Compl. at 6.) A defamation claim based on this allegation is barred by the one-year statute of limitations for defamation claims. Gaddy did not file this lawsuit until December 5, 2024, which is over two years after the claim accrued on May 21, 2022. Although Gaddy also alleges generally that "Defendants actively spread these defamatory statements to industry contacts and colleagues, evidenced by Plaintiff's encounter with Rice" (*see* Am. Compl. at 20), the statement is too vague and conclusory to substantiate a defamation claim. And in any event, any claim pertaining to statements within this period would be time barred.

C

Finally, Defendants seek to dismiss Gaddy's IIED claims. Gaddy alleges he suffered "severe emotional distress" from "the Defendants' actions," which has required ongoing psychiatric treatment. (Am. Compl. at 21-22.) Defendants argue that Gaddy has not alleged extreme and outrageous conduct sufficient to state an IIED claim. "To establish an IIED claim under Pennsylvania law, a plaintiff must show that (1) the defendant's conduct was extreme or outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the plaintiff's distress is severe." *Doe v. The Trustees of the Univ. of Pa.*, 270 F. Supp. 3d 799, 826-27 (E.D. Pa. 2017). The defendant's conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.'" *McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005) (quoting Restatement (Second) of Torts § 46 cmt. d)).

The factual basis for the IIED claim is vague. The Court interprets it to be based on Defendants' alleged actions regarding his termination and statements Defendants made to the Unemployment Compensation Board accusing him of theft. Nothing alleged in the Amended Complaint is so extreme and outrageous to rise to the level of a plausible IIED claim, moreover, courts generally dismiss IIED claims based on an employer's alleged discriminatory or retaliatory conduct. *See, e.g.*, *Vu v. Kott*, No. 23-3336, 2024 WL 2802849, at *5 (E.D. Pa. May 31, 2024) (dismissing IIED claim based on plaintiff's wrongful termination, the defendant's discriminatory action, and its publication of an inter-office memorandum accusing the plaintiff of falsifying reports and engaging in deceitful acts because the allegations "fail to meet the high threshold of

outrageous in character and beyond all bounds of decency"); *Ellis v. Genesis Healthcare Corp.*, No. 18-5536, 2019 WL 1303981, at *4 (E.D. Pa. Mar. 20, 2019) (dismissing IIED claim premised on a racially discriminatory termination); *Bogle v. City of Phila.*, No. 15-0394, 2015 WL 4159443, at *5 (E.D. Pa. July 9, 2015) ("Courts applying Pennsylvania law have repeatedly found that allegations of race and gender discrimination, even when coupled with retaliatory conduct, do not meet the 'extreme and outrageous conduct' standard necessary to state a claim of IIED."). In addition, Defendants' statements to the Unemployment Compensation Board are privileged and, as such, cannot form the basis of an IIED claim. *See Greenberg*, 161 A.3d at 989 (applying absolute privilege to defamation and IIED claims based on statements witness made to Board of Medicine); *see also Thompson v. Sikov*, 490 A.2d 472, 474 (Pa. Super. Ct. 1985) (concluding that attorney's statements were privileged and thus could not "form the basis of a cause of action of intentional infliction of emotional distress"). Even if the statements were not privileged, falsely accusing Gaddy of fraud is not the type of extreme and outrageous conduct which could establish an IIED claim. *See Cheney v. Daily News L.P.*, 654 F. App'x 578, 583-84 (3d Cir. 2016) (concluding that an article suggesting that the plaintiff was involved in a sex scandal did not allege an IIED claim and stating that "Pennsylvania courts have found extreme and outrageous conduct only in the most egregious of situations, such as mishandling of a corpse, reckless diagnosis of a fatal disease, and having sexual contact with young children.").

IV

For the foregoing reasons, the Court grants Defendants' Motion in part and denies it in part. Gaddy's retaliation claim against Woody's is dismissed for failure to

19

properly exhaust.  The state law claims for defamation and intentional infliction of emotional distress are also dismissed.  The motion is denied with respect to the Title VII discrimination claims against Woody's based on alleged discriminatory dress code policies and work assignments.

An appropriate Order follows.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**Gerald J. Pappert, J.**